**Thomas Allen NOWLIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7530.**

United States Court of Appeals Tenth Circuit.

Feb. 24, 1964.

John N. Dahle, Denver, Colo., for appellant.

Edward Mulhall, Jr., Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

Defendant-Appellant, Thomas Allen Nowlin, and his co-defendant, Caroline Veronica Lucero, were charged with violation of Title 18 U.S.C. § 2314. The information was in six counts, each identical except as to the serial numbers of the traveler's checks. Count 1 of the information contained the following charge:

"That on or about July 10, 1963, Thomas Allen Nowlin and Caroline Veronica Lucero, with unlawful and fraudulent intent, did transport and cause to be transported in interstate commerce from the City and County of Denver, in the State and District of Colorado, to San Francisco, California, a forged security, to wit: Bank of America Traveler's check No. 006–612–478, drawn on the Bank of America Main Branch, San Francisco, California, in the amount of $100.00, bearing the signature of Beatrice Mendell, to which was forged the counter-signature "Beatrice Mendell," and the said Thomas Allen Nowlin and Caroline Veronica Lucero then knew the same to have been forged, all in violation of Title 18 U.S.C., Section 2314."

To the information, defendants entered pleas of "Not Guilty", they were tried and convicted by a jury on each of the six counts. Only defendant Nowlin prosecutes this appeal. He does not question that the checks were "securities", that they were "forged", or that they were transported in interstate commerce. He urges, however, that under the rule enunciated in United States v. Gardner, 7 Cir., 171 F.2d 753, he did not "cause the transportation in interstate commerce". We are not at variance with the rule in the Gardner case, but we find that it is not applicable to the case at bar wherein the facts are clearly distinguishable from those in the Gardner case.

A summary of the undisputed evidence is essential to an understanding of appellant's contention.

Miss Beatrice Mendell, owner of the checks in question, testified that she resided in Denver from January until August 1963. Prior thereto she was stationed in Alaska. While in Anchorage, Alaska, in the spring of 1959, she purchased $5,000 in traveler's checks in preparation for a trip to Japan. These checks were in $100 denominations and were drawn on the Bank of America Main Branch, San Francisco, California. As a precautionary measure, Miss Mendell had prepared a list of the identification numbers of the traveler's checks even though they were never taken to Japan nor cashed by Miss Mendell.

Upon arriving in Denver in January 1963 Miss Mendell placed the traveler's checks in the amount of $1800 in an envelope. She put the balance of the traveler's checks, amounting to $3200, in another envelope which she kept in a

dresser drawer in her apartment. She was not aware of the disappearance of the envelope containing the $3200 until law enforcement agents inquired about them. Thirty checks were identified as those which had been issued to her. She testified that she was not acquainted with the defendants and that she had not given either of them authority or permission to sign her name to the checks.

Miss Erickson, Account Services Counsellor for the Denver U. S. National Bank, testified that at or about 2:30 p. m., on July 10, 1963, defendants Nowlin and Lucero entered the bank and were escorted to her desk by one of the bank guards. Appellant advised Miss Erickson that he and Lucero had moved to Denver from San Francisco and that they wanted to open a joint checking account in the amount of $3000, using the traveler's checks. They signed a signature card for the checking account as John Mendell and Beatrice Mendell. Upon the suggestion of Miss Erickson Appellant agreed to put part of the money in a checking account, and the balance in a savings account. Miss Erickson then filled out a new record for a checking account and for a savings account.

When asked for identification, appellant stated that their identification had been in Lucero's cosmetic bag, which had been stolen at the airport in Salt Lake City and that they had filed claims with the airport. At this juncture Miss Erickson contacted her superior officer with reference to opening the accounts without identification.

During the opening of the accounts Lucero removed from a black patent handbag the traveler's checks in question. She used a pen given to her by Miss Erickson and signed each of the traveler's checks "Beatrice Mendell". Miss Erickson compared the signatures on the checks and became suspicious. After Nowlin and Lucero left the bank Miss Erickson placed a hold on the two accounts, thus preventing any withdrawal of money. A few minutes later Lucero returned to Miss Erickson's desk with a check made out for $500. She stated that when attempting to cash the check she had been referred from the walkup window to Miss Erickson. Here again Miss Erickson observed discrepancies in the statements of the defendants which increased her suspicions.

On this same day, but before it was definitely established that the checks were forgeries, they were deposited in the mail for transmittal to the California bank. Thereafter, by a telephone call to the Bank of America in San Francisco, Miss Erickson learned that the bank had no record of an account of Beatrice Mendell. She was advised also that the bank was not able at the time to confirm the issuance of the traveler's checks in question because they had been issued on old stock form paper and those records were in the warehouse. The record is clear that the checks were mailed for payment in California prior to actual knowledge on the part of the Denver bank that the checks were forgeries.

To apply the rule of law laid down in United States vs. Gardner, supra, the evidence must show that the bank had absolute "knowledge" of the forgeries, and with this knowledge mailed the forged checks through interstate commerce for payment in order to incriminate the appellant and his co-defendant. The Denver bank, however, had mere suspicions of the forgeries, which is not tantamount to knowledge. There is a wide disparity between "suspicion" and "knowledge". We feel that this case falls clearly within the rule announced in United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359.

The record does not support appellant's argument that he did not "cause" the transportation in interstate commerce of the forged traveler's checks. Without a doubt he knowingly deposited in the Denver bank the traveler's checks, which he knew were drawn upon and must be forwarded for payment to an out of state bank. It is a well known fact that checks must be sent to the drawee bank for payment. Therefore, no other conclusion is possible but that appellant intended that they be sent across state

lines. Halfen v. United States, 10 Cir., 324 F.2d 52 (1963).

We have discussed the only point raised in this appeal which is decisive of this case. There is substantial evidence, as we have pointed out, that the Denver bank placed the checks in the channels of interstate commerce before it had "knowledge" that the checks were forgeries. There is likewise substantial evidence to support the conclusion that appellant intended to and did "cause" the checks to be transported in interstate commerce.

Affirmed.