UNITED STATES of America,
Plaintiff-Appellee,

v.

Arnold Thomas DIXON, Defendant-Appellant.

No. 14601.

United States Court of Appeals
Seventh Circuit.

Dec. 30, 1964.

Rehearing Denied Jan. 19, 1965.

Thomas F. Londrigan, Asst. U. S. Atty., Edward R. Phelps, U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Carl O. Hoffee, Springfield, Ill., for defendant-appellant.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Arnold Thomas Dixon, the defendant-appellant, was convicted, following a jury trial, of the interstate transportation of a falsely made and forged security, with fraudulent intent, in violation of 18 U.S. C.A. § 2314. He was sentenced for the maximum period of imprisonment (10 years) pursuant and subject to the provisions of 18 U.S.C.A. § 4208(b) and (c).

■■ The issues precipitated by defendant's appeal involve the sufficiency of the evidence to support the conviction. He contends the interstate transportation of the money order from Illinois to Missouri was not caused by him but was a new chain of commerce initiated by the alleged victim. He further contends the government failed to prove an element requisite to establish the money order was forged or falsely made. In resolving these issues at the appellate level we must view the evidence and the reasonable inferences which may be drawn therefrom in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

The record discloses that on August 20, 1963, at about 7:00 P.M., the defendant, attired and disguised as a woman, entered a liquor store in Granite City, Illinois, operated by Joseph Postar. He selected liquors and other items totaling $36.92 and tendered a money order in payment. The money order, in the face amount of $90.07, was drawn upon the Mound City Trust Company of St. Louis, Missouri, and was purportedly issued by Benson's Thrifty Market of St. Louis as agent of Safety Money Order Company, also of St. Louis. It was payable to Margaret A. Ivory and bore a stamped signature "A. C. Zimmerman" purportedly on behalf of Safety Money Order Company.

The defendant endorsed the name Margaret A. Ivory on the back of the instrument, gave Postar a telephone number, and exhibited a social security card and a driver's license bearing the name Margaret A. Ivory, as identification. Postar cashed the money order and gave the defendant the merchandise and $53.15 in change.

During the course of the transaction a local police officer entered the store. He testified he drew Postar aside and advised him another liquor store proprietor down the street had told the officer

he had refused to cash the money order for this woman but that it "might be good" and that Postar replied that with the identification presented he would take that chance. Postar testified the conversation with the police officer occurred after the defendant had left the store with the merchandise and it was not until then he was told that possibly the money order might not be good.

Shortly thereafter Postar attempted to make telephone inquiries concerning the money order and the East St. Louis, Illinois, address given by the defendant as Margaret A. Ivory's. The existence of such a street address was verified but, in so far as the record discloses, Postar learned nothing that evening concerning the validity of the money order.

The next morning Postar drove to the Mound City Trust Company at St. Louis, Missouri, a distance of some ten or twelve miles from Granite City, Illinois, where he was told the money order was invalid. He testified: "if it would have been O.K., I would have endorsed it and got my money for it". And that he "most certainly would have" cashed it had the trust company said it was O.K. Postar further checked with Benson's Thrifty Market and the successor to Safety Money Order Company with the same result.

The Safety Money Order Company had been purchased by Nationwide Check Corporation early in 1961, and all outstanding Safety Money Order Company blanks had been recalled at that time. None were re-issued.

In written statements given by the defendant to local authorities following his arrest the defendant admitted that at the time he cashed the money order he had knowledge it was "no good". He had been given a number of such money orders all made out, the social security card, and the driver's license, by a Charles Phillips. He was instructed to sign the money orders "as near as possible to the way they were made out". When he turned over the merchandise and cash he received from Postar he was given $25.00 for his part.

We do not regard as of significance the discrepancy between the testimony of the police officer and that of Postar as to whether their conversation about the possible invalidity of the money order took place prior to Postar's cashing it or immediately after the defendant left the store. In either event the jury was fully warranted in concluding that when Poster took the money order to St. Louis to make inquiry at the trust company, and to cash the order if valid, he had become suspicious but had no knowledge, actual or constructive, that the money order actually was invalid. Nor is there basis for an inference that Postar presented the money order to the St. Louis trust company "for the purpose of making a case from the federal standpoint" as was the situation in United States v. Gardner, 7 Cir., 171 F.2d 753, relied upon by the defendant. In Gardner the victim actually knew several days prior to their presentment that the checks he had received were no good and he deposited them not for payment but for the admitted purpose of attempting to make a case for federal prosecution.

The jury could reasonably infer that when Postar's suspicion was aroused he preferred to ascertain immediately the true status of the money order by personally presenting it to the drawee in nearby St. Louis rather than to incur the delay attendant to depositing it for collection through his normal banking channels and to avoid having the instrument returned to him as invalid should his suspicion prove well-founded.

We agree with the government that the rationale of United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L. Ed. 359, applies. It was pointed out in Sheridan (p. 391, 67 S.Ct. p. 338):

"A word will dispose of the idea that Sheridan did not 'cause' the transportation. Certainly he knew the checks would have to be sent to the Missouri bank for collection. Given the proven forgery and uttering, no other conclusion would be possible. Necessarily, too, it would follow he intended the paying bank

to send the checks there for that purpose. He knew they must cross state lines to be presented. One who induces another to do exactly what he intends, and does so by defrauding him, hardly can be held not to 'cause' what is so done."

That Postar acted directly rather than through intervening banking channels does not on the facts here presented remove the situation from the ambit of Sheridan. And, the observation recently made in Nowlin v. United States, 10 Cir., 328 F.2d 263, 264, is apposite. It was there said:

"To apply the rule of law laid down in United States vs. Gardner, supra, the evidence must show that the bank had absolute 'knowledge' of the forgeries, and with this knowledge mailed the forged checks through interstate commerce for payment in order to incriminate the appellant and his co-defendant. The Denver bank, however, had mere suspicions of the forgeries, which is not tantamount to knowledge. There is a wide disparity between 'suspicion' and 'knowledge'. We feel that this case falls clearly within the rule announced in United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359."

In view of the admissions made by the defendant as to his knowledge of the invalidity of the money order at the time he cashed it and the uncontroverted evidence that no money orders were issued by Safety Money Order Company subsequent to April 1961, and that all of its blank money orders were recalled and none reissued after the company's acquisition by Nationwide Check Corporation, we perceive no merit to the defendant's contention the government's failure to make specific proof that the stamped signature "A. C. Zimmerman" was a forgery requires a reversal for failure to prove an essential element of the offense. The record abundantly establishes that the security in its entirety was false and fraudulent and that the defendant knew it to be so when by his acts he caused it to be transported in interstate commerce.

Mr. Carl O. Hoffee, a member of the Springfield, Illinois, Bar represented the defendant by Court appointment both in the trial court and in this appeal. We commend Mr. Hoffee for his services in these assignments and for the able presentation of defendant's case on appeal.

The judgment order of the District Court is affirmed.

Affirmed.