**UNITED STATES of America**

v.

**Carl Howard CARTER, Lester Murphy Hayes, Alfredo S. Desphy.**

**Carl Howard Carter, Appellant.**

**No. 16963.**

United States Court of Appeals Third Circuit.

Argued Sept. 16, 1968.

Decided Oct. 9, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 905.

James M. Scanlon, Scranton, Pa., for appellant.

Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

A jury found the appellant guilty of eight counts in an indictment charging the transportation of falsely made checks in interstate commerce in violation of 18 U.S.C. Secs. 2314 and 2. He was jointly indicted in these counts with certain co-defendants, each of whom, pleading guilty, testified at trial. He was the sole defendant in three additional counts which were dismissed by the court on motion of the government at the close of its case. Appellant asks for a new trial on seven of the counts, and for judgment of acquittal on one. We will deny the motions.

Appellant complains that his request for a severance of the three counts in which he was the sole defendant should have been granted. Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants in the same indictment "together or separately" if they are alleged to have participated in the "same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 permits a severance upon a showing of prejudice. No prejudice was shown here. Appellant was not convicted of the three counts in question, and in the counts where a conviction did result, the basic evidence incriminating him came from the lips of his codefendants in open court.

He also contends that it was fundamental error for the court to admit evidence of the circumstances under which the co-defendants first met him, which information was admitted as a prelude to the government's presentation of the basic evidence relating to acts charged in the indictment. This history disclosed similar illegal check cashing operations in other states.

Evidence of other offenses, wholly independent of the one charged, is generally inadmissible. This rule is subject to some well-established exceptions, one of which was particularly appropriate in the case at bar, viz., where the other offense is logically connected with that charged, or where the act is so closely and inextricably a part of the history of the guilty act itself as to form part of the common plan or scheme of criminal action.[1] Kreuter v. United

---

1. Cf. the definition of this court speaking through Judge Goodrich in United States v. Stirone, 262 F.2d 571 at 576:

"(T)he general rule, as stated by most courts, is that evidence of other offenses is inadmissible in a criminal prosecution for a particular crime. This rule is qualified by a number of exceptions stated in terms of the capacity of the evidence to prove some specific fact or issue such as intent, plan, scheme or design. E. g., United States v. Klass, 3 Cir., 1948, 166 F.2d 373, 377; United States v. Bradley, 3 Cir., 1945,. 152 F.2d 425. But since the range of relevancy, other than for

States, 376 F.2d 654, 657 (10 Cir. 1967); Robinson v. United States, 366 F.2d 575, 578 (10 Cir. 1966); United States v. Crowe, 188 F.2d 209, 212 (7 Cir. 1951).

■■■ He asserts an additional objection: the failure of the court to instruct the jury as to the limited purpose for which this evidence was offered. We note that the appellant, who was represented by competent trial counsel, neither requested a specific instruction on this point, nor made any objection to the charge as given. Rule 30 of the Federal Rules of Criminal Procedure provides that "[N]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Allegations of error not properly raised in the trial court cannot be considered on appeal. Rule 52(b) permits an appellate court to consider "plain errors" or defects affecting substantial rights even though they were not brought to the attention of the court below. The plain error rule, however, is appropriate only in exceptional cases where it is necessary to prevent grave miscarriages of justice or to preserve the integrity of the judicial proceedings. Petschl v. United States, 369 F.2d 769, 773 (8 Cir. 1966).

Thus, the question is whether the failure of the trial court to instruct the jury as to the limited purpose of the evidence of prior offenses constituted "plain error". Although the tests for determining plain error by no means approach the certainty of mathematical formulae, the standard to be applied on review was most aptly stated in Kotteakos v. United States:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very

slight effect, the verdict and judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." [2]

In Jarabo v. United States, 158 F.2d 509, 511 (1 Cir. 1946), evidence of other offenses was introduced for the limited purpose of showing the intent of the defendant in doing the acts charged in the indictment. Appellant in that case assigned as error the failure of the trial court to charge the jury on the limited purpose for which the evidence was offered. Appellant's argument was rejected by the court because of his failure to request such a charge before the jury retired. In Baker v. United States, 310 F.2d 924 (9 Cir. 1962) the court reached the same result in holding that appellant's failure to request limiting instructions when the prior offenses were introduced for the limited purpose of showing criminal intent precluded him from raising the question on appeal. The court declined to notice such omission as a plain error or defect within the meaning of Rule 52(b). Convinced that Carter's substantial rights were not affected by the failure to give the limiting instruction, we decline to notice such omission as a plain error within the meaning of Rule 52(b).

■■■ One of the appellant's co-defendants, a certain Lester Murphy Hayes, was apprehended in the act of attempting to cash a falsely made check. He told the police: "I am not the one that you really want, the one that you really want is sitting in a truck waiting and if you don't get there in time he will leave." The appellant was then found sitting in the truck with the other co-defendant, was taken into custody, and in the arrest process a "fast frisk" was made of his person, disclosing the presence of another check. Although this check was

the purpose of showing criminal propensity, is almost infinite, we think the rule may be phrased a little less mechanically. Evidence of other offenses may be received if relevant for any purpose other than to show a mere

propensity or disposition on the part of the defendant to commit the crime."

2. 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). See also Fiswick v. United States, 329 U.S. 211, 218, 67 S.Ct. 224, 91 L.Ed. 196 (1946).

not introduced in evidence, and all testimony relating to this search was ordered stricken from the record by a clear and forceful instruction to the jury by the trial judge, appellant now assigns the mere mentioning of the check as fundamental trial error. We disagree. We perceive a strong likelihood that had this testimony been permitted to stand, it would have been admissible under the doctrine of probable cause to arrest without a warrant and a subsequent search as an incident thereto. Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. LaMacchio, 362 F.2d 383 (3 Cir. 1966).

■ In support of his motion for acquittal in the tenth count, appellant urges that no federal jurisdiction obtained because at the time the shopkeeper deposited the check in his bank for return across the state line to the drawee bank, he had "knowledge that the check was false". It is contended that under such circumstances the transportation of the check stops at the place of deposit, analogizing a hypothetical situation of a motor vehicle recovered before crossing the state line. United States v. Gardner, 171 F.2d 753 (7 Cir. 1948). In Nowlin v. United States, 328 F.2d 262 (10 Cir. 1964) the court emphasized that the pivotal issue is the question of the actual knowledge of the forgery as distinguished from mere suspicion of forgery, stating at page 264:

"To apply the rule of law laid down in United States v. Gardner, supra, the evidence must show that the bank had absolute 'knowledge' of the forgeries, and with this knowledge mailed the forged check through interstate commerce for payment in order to incriminate the appellant and his co-defendant. The Denver bank, however, had mere suspicions of the forgeries, which is not tantamount to knowledge. There is a wide disparity between 'suspicion' and 'knowledge'. We feel that this case falls clearly within the rule announced in United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359."

In the proceedings before us, the shopkeeper had good reason to suspect that he had cashed a forged check following his conversations with his local banker and the police. We do not find, however, that at this time the storekeeper had "absolute knowledge" of the forgery as was the case in *Gardner*.[3]

The judgment of the District Court will be affirmed.

---

3. In count ten the check was cashed by the shopkeeper who did in fact deposit it in his bank. The check was then returned to him by the local bank without further processing, subsequent to an inquiry by him as to whether the check was good. The check was then redeposited at a time when the shopkeeper had strong doubts about its authenticity, based on certain information his bank had received from the drawee bank. The shopkeeper later testified:

"Q. So you don't know exactly whether or not the check was good or not until you had it processed, isn't that correct?

"A. That is correct." (P. 32)

Cf. Hendrix v. United States, 327 F.2d 971 (5 Cir. 1964) (concurring opinion) at page 977:

"I think that the case of United States v. Gardner, 7 Cir., 171 F.2d 753, is not apposite here. What was said in that case was unnecessary to the decision, was pure dictum, and predicated on a supposed analogy with the case of a stolen motor vehicle recovered before it crossed the state line; that is to say, a case where there was no transportation in interstate commerce. Such was not the case here.

"It is true that Corlew had sent the check to his own bank in Pascagoula which refused to accept it; and he had doubts whether the check was good even while his employee was going to the bank with the check. Corlew's account of his mental attitude with respect to the ultimate payment of the check is not at all points entirely consistent; but he did send it to Mobile and he testified as follows:

" 'Q. You sent it to Mobile to see if it was good?

" 'A. Yes hoping it was.'

"This the jury had the right to believe and the proof that Sykes 'caused' the check to be transported to Mobile within the meaning of the Pereira case, supra, is not affected by the fact that Corlew had his fingers crossed when he sent it through."