**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Egley WEBB, Defendant-
Appellant.**

**No. 30806
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 20, 1971.

* [1]  Rule 18, 5th Cir.;  See Isbell Enter-
prises, Inc. v. Citizens Casualty Company
of New York et al, 5 Cir. 1970, 431 F.
2d 409, Part I.

Jimmie D. Perkins, Atlanta, Ga., Court appointed, for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., J. Owen Forrester, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Robert Egley Webb was tried by a jury on a one-count indictment charging him with causing the interstate transportation of a falsely made and forged payroll check, knowingly and with intent to defraud, in violation of 18 U.S.C. § 2314. At the close of all the evidence, counsel for Webb moved for a judgment of acquittal pursuant to Fed.R.Crim.P. Rule 29(a); the motion was denied. The jury returned a verdict of guilty, and the Trial Judge sentenced Webb to ten years' imprisonment. Webb appeals, contending that the evidence was insufficient to show that the instrument in question was a check, that it was forged, and that he caused its transportation in interstate commerce. We affirm.

On or about November 15, 1969, the appellant bought two tires at a Marietta, Georgia, service station. In exchange for the tires he gave the service station operator, Mr. L. E. Simmerman, a document purporting on its face to be a payroll check drawn by Trans World Airlines on the Chemical Bank of New York payable to one Edward W. Cobb, and bearing the endorsement "Edward W. Cobb" in the appropriate place on the back. Mr. Simmerman gave Webb in cash the difference between the cost of the tires and the amount of the check, and Webb departed. Though the fact that some printing on the check was off center and the fact that it lacked a drawer's signature made Mr. Simmerman suspicious, he nevertheless forwarded it to his local bank along with other checks for deposit. Webb's check was

transported through banking channels to New York City, but was returned subsequently to Mr. Simmerman unpaid.

Webb was arrested and indicted for this transaction. Several more false TWA payroll checks were found in Webb's car at the time of his arrest, along with a Georgia driver's license, a social security card and a TWA payroll identification card, all in the name of Edward W. Cobb. At Webb's trial the Government introduced evidence that in October or November of 1969 Webb had exchanged another TWA check for value at a K-Mart store in Marietta. This one was approved by a K-Mart credit supervisor and a manager. It, too, was deposited in a local bank, and was shortly thereafter returned without payment.

■ Webb contends that the document he exchanged for tires and cash at the service station was not a "security," as alleged in the indictment charging him with a violation of 18 U.S.C. § 2314. Section 2311 of Title 18, U.S.C., defines "security," for purposes of Section 2314, to include "check." Webb contends, however, that the term "check" refers only to instruments having all the requisites of negotiable checks according to local law; hence, he argues, the writing in question was not a check, since it was not signed by the drawer. See Georgia Uniform Commercial Code § 3–104(1) (a).

We do not construe the statute so narrowly. The writing had most of the attributes of a check, both as a matter of local law and in common understanding. Webb used it in a transaction as a check would ordinarily be used. That was enough, in our view, to warrant the Trial Judge in submitting to the jury the question whether the writing constituted a check as alleged in the indictment, and in denying Webb's motion for acquittal on this ground.

■ Webb further contends that the check was not, as the indictment charged, forged. He maintains, not that it was a genuine TWA payroll check and that he was entitled to take payment on

it as "Edward W. Cobb," but that it was such a poor facsimile of a negotiable payroll check that passing it off for value was no crime.

In general, a security may be held to be forged, for purposes of Section 2314, only if it has sufficient appearance of validity upon its face as to enable it to be used to the prejudice of another. United States v. Metcalf, 4 Cir., 1968, 388 F.2d 440, 442. The fact that a security has been accepted in good faith as genuine is strongly persuasive, if not conclusive, in this regard. Mr. Simmerman, who accepted the check from Webb, testified that he noticed the absence of a drawer's signature, but forwarded the check for payment anyhow in the hope that the putative drawer (TWA, a facsimile of whose emblem appeared at the top of the check) would authorize payment. We cannot say that this was an absurd hope on Mr. Simmerman's part —the check did in fact clear several intermediate banks—or that his testimony was unworthy of belief. Another merchant in the Atlanta area accepted a similar false instrument passed by Webb. We conclude that there was substantial evidence to support a jury finding that the writing reasonably appeared to be of legal efficacy. Cf. Edge v. United States, 5 Cir., 1959, 270 F.2d 837, 838; Hubsch v. United States, 5 Cir., 1958, 256 F.2d 820, 823. Thus the appellant's motion for a judgment of acquittal on this ground was properly denied.

■ ■ Webb's third contention—that the evidence was insufficient to show that he caused the transportation of the forged check in interstate commerce— similarly fails. In general, the "interstate transportation" requirement of 18 U.S.C. § 2314 is satisfied when a person knowingly cashes a check in one state drawn on a bank in another state. United States v. Sheridan, 329 U.S. 379, 391, 67 S.Ct. 332, 338, 91 L.Ed. 359 (1946); Hubsch v. United States, supra, 256 F.2d at 822. In United States v. Gardner, 7 Cir., 1948, 171 F.2d 753, the Seventh Circuit held as an exception to the *Sheridan* rule that where the party accepting a forged check knew it was forged, and accepted it so as to forward it to an out-of-state bank "for the purpose of making a case from the federal standpoint," the accepting party caused the transportation of the check in interstate commerce and the man who passed the check could not be convicted under Section 2314. 171 F.2d at 756–757 (alternative holding). Those Circuits which have adopted the reasoning of *Gardner* have carefully distinguished knowledge of the falseness of the instrument on the part of the party accepting it, from suspicion. See United States v. Carter, 3 Cir., 1968, 401 F.2d 748, 751, cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797; Nowlin v. United States, 10 Cir., 1964, 328 F.2d 262, 264; cf. Ramsey v. United States, 8 Cir., 1964, 332 F.2d 875, 877–878. The Seventh Circuit has itself adopted the distinction in a case interpreting *Gardner*. See United States v. Dixon, 7 Cir., 1964, 339 F.2d 932. At the trial of the instant case, the witness who had accepted the bad check refused to concede more than that the peculiarities of the check made him suspicious of its validity. The evidence did not establish that the witness knew the check was false. The appellant's motion for a judgment of acquittal was properly denied on this third and last ground.

Affirmed.