**UNITED STATES of America**

v.

**Perry Imperatore CHICARELLI et al.**

**Appeal of Eugene NAPOLITANO, in No. 19,190.**

**Appeal of James Thomas GREEN-HALGH, in No. 71–1195.**

**Appeal of Lawrence Robert GREEN-HALGH, in No. 71–1196.**

**Nos. 19190, 71–1195, 71–1196.**

United States Court of Appeals, Third Circuit.

Argued April 8, 1971.

Decided July 1, 1971.

John W. Yengo, Jersey City, N. J., argued for appellant Eugene Napolitano.

Jeanne P. Gallagher, Jersey City, N. J., for appellants James Thomas Greenhalgh and Lawrence Robert Greenhalgh.

W. Hunt Dumont, Asst. U. S. Atty., Newark, N. J., for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from July 2, 1970, judgments and commitments of appellants in the United States District Court for the District of New Jersey following the entry of June 1970 orders of that court denying post-trial motions for judgments of acquittal or, in the alternative, a new trial.

Eugene Napolitano, Lawrence R. Greenhalgh, James T. Greenhalgh, James F. Wood and Perry I. Chicarelli were prosecuted under a two-count indictment charging them with conspiracy to possess goods stolen from interstate shipment, knowing the said goods to have been stolen, and the possession of said goods, knowing them to have been stolen, in violation of 18 U.S.C. §§ 371 and 659, respectively. Perry I. Chicarelli subsequently pleaded guilty to Count I of the indictment and Count II was dismissed against him. He was severed from the case prior to trial and appeared as a witness for the Government at the trial of appellants. The other four defendants were tried before a jury, which returned a verdict of not guilty as to James Wood on both counts and not guilty on Count I and guilty on Count II as to the other three defendants.

The appeals of Eugene Napolitano, Lawrence R. Greenhalgh and James T. Greenhalgh have been consolidated. These defendants raised a number of contentions allegedly requiring the grant of a new trial.[1]

After consideration of all these contentions in light of the record as a whole, we have concluded that no reversible error was committed and that the appellants had a fair trial. *See* United States v. Laurelli, 293 F.2d 830 (3rd Cir. 1961); United States v. Hohensee, 243 F.2d 367 (3rd Cir. 1957). As reaffirmed by the Supreme Court of the United States in Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), quoting from Lutwak v. United States, 344 U.S. 604 at 619, 73 S.Ct. 481, at 490, 97 L.Ed. 593, " 'A defendant is entitled to a fair trial but not a perfect one.' "

The following two contentions of appellants require discussion:

I. Objection to witness for the Government acting as a bailiff for the jury on certain occasions.

 Appellants claim that a mistrial should have been granted because a deputy United States Marshal, William C. Ramoth, acted as bailiff on several occasions even though he was a witness for the Government. We disagree and do not think that the situation presented by this record is controlled by Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), which is relied on by appellants. In *Turner,* the Supreme Court reversed a conviction because the jury was placed under the care of two deputy sheriffs who were the key witnesses for the prosecution. The Court stated that the credibility of these witnesses "must inevitably have determined whether [the defendant] was to be sent to his death" and noted that they were in "continuous and intimate association throughout a three-day trial—an association which gave these witnesses an opportunity * * * to renew old friendships and make new acquaintances among the members of the jury." 379 U.S. at 473, 85 S.Ct. at 550.

Recognizing the factual limitations in *Turner,* several Circuit Courts of Appeals, most notably the Fifth Circuit Court of Appeals, have refused to reverse convictions where witnesses acted as bailiffs unless the witnesses' testimony was central to the development of the Government's case and their contact with the jury was continual and intimate. *See e. g.,* Jackson v. Beto, 388 F. 2d 409 (5th Cir. 1968); Crawford v. Beto, 385 F.2d 156 (5th Cir. 1967); Shepherd v. Wingo, 414 F.2d 274 (6th Cir. 1969).

In the present case, Ramoth fingerprinted each of the defendants at the time of their appearance before the United States Commissioner on March 17, 1969. He sent their respective fingerprint cards to the FBI Laboratory in Washington, D. C., for comparison purposes. He was called as a Government witness only for the formal, perfunctory purpose of identifying these cards. His testimony was not central to the Government's case and was not controverted by defendants. Unlike the situation in *Turner,* defendants' fate was not dependent on the witness' credibility. In addition, his two encounters with the jury did not amount to "continuous and intimate association." He testified in the presence of defendants' counsel at the hearing held by the court on defendants'

---

1. These contentions include (a) improper instruction that Chicarelli's building was rented by Wood, (b) misleading and inadequate instruction on circumstantial evidence, (c) incorrect and inadequate instructions on weight of evidence and inferences, (d) insufficient fingerprint evidence, (e) inadequate instructions on credibility, (f) improper charge on weight to be given to accomplice testimony, (g) incorrect statement in the charge of defense contentions, (h) prejudicial statement by the trial judge, in answer to defendant's summation that "the case is not yet closed," that the jury should not consider the fact that other individuals may be brought to trial but should confine its attention to the defendants presently on trial, and (i) inconsistent verdicts in light of the record.

motion to declare a mistrial that he had led the jury into the courtroom on two occasions, stayed with them for a total of several hours in the courtroom, and on one of the two occasions had also led the jury out of the courtroom. He testified that he neither had any conversations with the jurors nor heard any of their discussions.

Under these circumstances, we find that this contention must be rejected as there was no prejudice to defendants requiring a new trial.

II. Objections to procedure and statements of trial judge at the time jury requested certain testimony to be read back to them.

After the jury had been deliberating more than an hour the jury came back to the court room with the request that three parts of the testimony [2] be read to them and that "a renting slip that was supposed to be in evidence" be delivered to them. The trial judge stated (N.T. 71 of 4/21/70):

> "Members of the jury, you have made a request of the Court to have certain testimony read to you. Ordinarily we don't do this, and you have to depend upon your own recollection of the testimony, but in view of the fact that this took place ten or eleven days ago, perhaps I should make an exception to it."

The judge then read from his own notes "so that the stenographer can search through his notes and come to it a little quicker rather than starting from the first day and spending a couple of hours reading through them. I am trying to help him locate where this particular inquiry is" (N.T. 72). The judge in-

formed the jury that "no rent receipt [had ever been received] * * * in evidence" (N.T. 73) and that it would take the court reporter "fifteen or twenty minutes" to locate the portions of the testimony requested. The jury returned to its deliberations. Before the jury returned to the courtroom, counsel for the Greenhalghs asked "* * * would it be proper for the Court to ask the jury why they want this?" and "Assuming that this testimony was all read, could counsel ask that other portions be read too. * * *." The trial judge stated, "You can object to it. I won't permit it to be read" (N.T. 74). All three counsel for the four defendants still on trial then objected to the reading of the testimony on "all three questions." The transcript then contains this language at N.T. 74–75:

> "[Assistant U.S. Attorney]: In view of that, I wouldn't want it read back for the protection of the record.
>
> "THE COURT: It won't be read back.
>
> "(The jury returns to the courtroom.)
>
> "THE COURT: Members of the jury, in view of defense counsel's objection to the reading of the testimony, as to that portion of the testimony that you requested, the Court will now have to direct you that you will have to use your own recollection of what the testimony was.
>
> "(The jury retires to continue deliberations.)"

First, defendants contend that "the procedure was totally irregular." [3] A trial judge has wide discretion in deciding whether or not to read back tes-

---

2. The direct examination of Chicarelli regarding the visit of defendant Wood on the night of the 25th, "the direct examination of Napolitano regarding his examination of Greenhalgh's roof, then from there on the trip to Rahway," and the cross-examination of Napolitano regarding the date he went to Chicarelli's (N.T. 71–74).

3. Counsel for defendants have pointed to no portion of the record supporting the language in its brief that there was a violation "of federal procedure which required that counsel be informed at all times of the requests made by the jury." The record shows that counsel were informed by the trial judge of the requests in open court in the presence of the jury and that counsel never requested any proof of the jury requests.

timony to the jury at their request.[4] United States v. DePalma, 414 F.2d 394, 396–397 (9th Cir. 1969); *see also* United States v. Jackson, 257 F.2d 41, 43 (3d Cir. 1958); *cf.* United States v. Schor, 418 F.2d 26, 30–31 (2d Cir. 1969). This contention is rejected.

For the guidance of the district courts and the bar on standards and considerations governing requests by the jury to review testimonial evidence, we call attention to Standards Relating To Trial By Jury (ABA Project on Minimum Standards of Criminal Justice), § 5.2 and Commentary at 134–38 (Approved Draft 1968).

Second, at the oral argument before this court, counsel for appellants contended for the first time that defendants had been prejudiced because the trial judge told the jury they would have to use their own recollection of the testimony "in view of defense counsel's objection."

■ After careful consideration, we have concluded that this contention must be rejected because of the well recognized principle that objections to language in the trial judge's statements to the jury, which could have been remedied by curative instructions prior to the retirement of the jury for their deliberations resulting in the verdict, may not constitute the basis for a new trial

where such objections are first made after the verdict has been returned, unless plain error is involved under F.R. Crim.P. 52(b).[5] United States v. Mancuso, 423 F.2d 23, 29–30 (5th Cir. 1970); Spriggs v. United States, 133 U.S.App. D.C. 76, 408 F.2d 1279 (1969); White v. United States, 394 F.2d 49, 55–56 (9th Cir. 1968); United States v. Barrow, 363 F.2d 62, 67 (3d Cir. 1966); United States v. Laverick, 348 F.2d 708, 714 (3d Cir. 1965); United States v. Provenzano, 334 F.2d 678, 690 (3d Cir. 1964), cert. denied, 379 U.S. 947, 85 S. Ct. 440, 13 L.Ed.2d 544 (1964); Wegman v. United States, 272 F.2d 31, 34–35 (8th Cir. 1959). See F.R.Crim.P. 30 & 52(b); *cf.* United States v. Salas, 387 F.2d 121 (2d Cir. 1967), cert. denied, 393 U.S. 863, 89 S.Ct. 145, 21 L.Ed.2d 131 (1968). In the *Provenzano* case, Judge Biggs used this language at 690 of 334 F.2d:

"* * * [A]s a general rule the failure to object to an instruction during a criminal prosecution on the ground urged on appeal, forecloses the party from raising the question before the reviewing court. * * * The manifest purpose of the rule is to avoid whenever possible the necessity of a time-consuming new trial by providing the trial judge with an opportunity to correct any mistakes in the charge."

---

4. We re-emphasize the consistent position of this court that discretion in the conduct of the trial must be given to the trial judge. See United States v. Angelo, 153 F.2d 247, 251–52 (3d Cir. 1946), where the court said:

"* * * the proper administration of justice requires the vesting of discretion in the trial judge. It would be both impossible and undesirable to delimit strictly the powers of the trial judge and to set detailed regulations for the conduct of every case. * * * On the judge rests the chief responsibility for the result; he is the cornerstone of any effective administration of trial by jury, and we are disposed to give him great leeway."

5. The same principle has been applied to objections made after the verdict to re-

marks of opposing counsel, Hohensee v. United States, 243 F.2d 367, 372–373 (3d Cir.), cert. denied, 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136, rehearing denied, 354 U.S. 927, 77 S.Ct. 1376, 1 L.Ed. 2d 1441 (1957), and to improperly admitted evidence, United States v. Bogish, 204 F.2d 507 (3d Cir. 1953); Blodgett v. United States, 161 F.2d 47, 51–52 (8th Cir. 1947). Furthermore, this rule has been applied consistently where counsel have failed to object to portions of a supplemental charge until after verdict. See United States v. Manos, 340 F.2d 534, 540 (3d Cir. 1965); Maddox v. United States, 330 F.2d 1022, 1023 (5th Cir. 1964); Carroll v. United States, 326 F.2d 72, 84 (9th Cir. 1964); Wegman v. United States, *supra*; Daniel v. United States, 268 F.2d 849, 853 (5th Cir. 1959).

In United States v. Grosso, 358 F.2d 154, 158 (3d Cir. 1966), this court said:

"\* \* \* [I]f appellant's counsel was of the opinion that the errors were prejudicial it was his obligation to interpose a timely objection and seek corrective action by the Court. [Citing cases]. He should have taken this course when he learned of the errors, but failed to do so. A defendant may not sit idly by in the face of obvious error and later take advantage of a situation which by his inaction he has helped to create."

The language used by the trial judge did not affect "the substantial rights" of the appellants and this language of *Grosso* at page 158 is applicable here:

"Although not required to do so, we are empowered to consider the alleged errors on the merits if they affected the 'substantial rights' of the appellant. Fed.Rules Cr.Proc., rule 52(b), 18 U.S.C.A.; [citing cases]. The power is discretionary and should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice. Ibid. We do not have such a situation in the instant case."

In federal appellate court cases ruling on challenges to the actions of trial judges on requests of jurors for the reading of portions of trial testimony to them or for submission of transcript or exhibits to them, the decisions have held there was no reversible error where counsel did not challenge such actions prior to the retirement of the jury for its ultimate deliberation resulting in the verdict. See United States v. Simon, 425 F.2d 796, 812–813 (2d Cir.), cert. denied, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed. 420 (1970); Turpin v. United States, 108 U.S.App.D.C. 274, 281 F.2d 637, 639 (1960).

In Turpin v. United States, *supra* at 639, the Chief Justice of the United States (then a Circuit Judge) stated that even if the jury had known that defense counsel's objection to their request to see a map which had not been offered in evidence had prevented them from receiving the map, "it is difficult to see how \* \* \* this information, if known to the jury, prejudiced appellant. No objection was made by appellant at the time \* \* \*." Certainly, there was no plain error requiring a new trial in the language used by the trial judge. The fact that the jury returned different verdicts as to different defendants and not guilty verdicts on Count I as to all the appellants indicates the lack of any prejudice arising from this incident.

If defense counsel had objected to the language of the trial judge of which he now complains, a curative instruction could have been made, pointing out that (1) all counsel had ultimately joined in the objection, (2) it was the duty of defense counsel to assert the rights of their clients under applicable rules of law, and (3) the trial judge, in the exercise of his discretion, accepted the responsibility for not reading the requested testimony to the jury.[6] *Cf.* Bland v. United States, 299 F.2d 105, 110 (5th Cir. 1962).

Where hearsay incriminating testimony was given in a criminal trial and the trial judge directed that it be stricken on appellant's objection, this court used this language in denying the contention that a new trial was required in United States v. Bogish, 204 F.2d 507, 508 (3d Cir. 1953):

"No motion for a mistrial was made upon the basis of this testimony nor

---

6. It is noted that an appellate court's view that "it would be better to [discuss matters] outside the hearing of the jury" does not mean that discussion of such matters in their presence is reversible error. See United States v. Ross, 321 F.2d 61, 66 at n. 3 (2d Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963).

was the trial judge requested to give further instructions with respect to it. Under these circumstances it cannot be made the basis on appeal for convicting the trial judge of error."

For the foregoing reasons, the July 2, 1970, judgments and commitments of appellants will be affirmed.

Tuttle, Circuit Judge, filed opinion concurring in part and dissenting in part.