**UNITED STATES of America**

v.

**Robert RICKUS and Dennis Nazarok.**

**Crim. No. 70–399.**

United States District Court,
E. D. Pennsylvania.

Nov. 10, 1972.

U. S. Atty. Louis C. Bechtle, Asst. U. S. Atty. John F. Penrose, for the Government.

Bernard L. Segal, of Segal, Appel & Natali, Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, District Judge.

The defendants have filed a Motion for a New Trial or Arrest of Judgment after they were found guilty by a jury on February 4, 1972 of robbing the Girard Trust Bank in Warminster, Pennsylvania, on June 19, 1970 which was in violation of 18 U.S.C. § 371 and § 2113(b) and (d). The basic substantive facts have been previously stated in the Court's Opinion, 351 F.Supp. 1379, dated January 10, 1972 which dealt with the suppression of certain evidence. Therefore, there will be no restatement of the facts; however, if other facts must be brought out for clarification, this will be done at the appropriate place in this Opinion.

The defendants have raised several points in their motion. They shall be dealt with *ad seriatim*. The defendants' contentions are, as follows:

*1. The Court erred in denying the defendants' Motion for a Mistrial based upon an alleged observation by members of the jury of the defendants wearing handcuffs or to give the jury cautionary instructions about the alleged observation.*

There is no doubt that the defendants were seen by some of the jurors; however, there is some question whether or not the jurors saw that the defendants were handcuffed behind their backs. The Court took notice of this and then propounded the question of whether the government or defense counsel could offer any suggestions that would cure the possibility of the jurors seeing the defendants manacled. (Feb. 1, N.T. 15–17; Feb. 3, N.T. 27–30). Neither the defense nor the government offered any suggestion. The Court instructed the jurors to leave the courthouse immediately when they had been excused (Feb. 1, N.T. 78). It was evident that the colloquy that went on between the Court and counsel could not resolve the problem without further complications aris-

ing. (Feb. 1, N.T. 15–17, Feb. 3, N.T. 28–30).

■ The defendants did not submit any proposed point for charge on this subject. The Court gave all counsel a broad leeway in this matter and finds no error in not charging the jury on the alleged observance. The fact that some of the jurors may have seen the defendants in handcuffs was not so inherently prejudicial to require a mistrial. *See* United States v. Acosta-Garcia, 448 F.2d 395 (9th Cir. 1971); United States v. Figuero-Espinoza, 454 F.2d 590, 591 (9th Cir. 1972); McCoy v. Wainwright, 396 F.2d 818 (5th Cir. 1968); United States v. Frazier, 417 F.2d 1138 (4th Cir. 1969), cert. denied 397 U.S. 1013, 90 S. Ct. 1245, 25 L.Ed.2d 427, rehearing denied 398 U.S. 945, 90 S.Ct. 1850, 26 L. Ed.2d 284.

*2. The Court wrongfully denied the defendants' Motion for Reconsideration of the Suppression of Evidence that was recovered by the Moorestown, New Jersey police.*

The Court wrote an Opinion on January 10, 1972 in which defendants' motion was denied. The additional argument which the defendants have raised in their present motion does not change the position of the Court's reasoning in denying the original motion to suppress the evidence.

*3. The Court should have quashed the jury panel and the Court erred in not allowing a hearing on the motion.*

The defendants assert that the jury panel does not have any people between the ages of 18 and 25 because they have been excluded and the panel does not contain a fair percentage of black persons based upon 28 U.S.C. § 1867 which provides in part:

(a) In criminal cases, *before* voir dire examination begins, or *within seven* days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*, the defendant may move to dismiss the indictment

or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury. [Emphasis added].

The chronological sequence of defendants' Motion to Quash was the key factor in the Court's Order of January 28, 1972 denying the motion (Jan. 27 and 28, N.T. 2–9). The jury was selected on January 27, 1972 and defense counsel made his motion in writing during the afternoon of January 27, 1972 at the time of jury selection (Jan. 28, N.T. 2). On the morning of January 28, 1972 the Court heard oral argument on the motion and entered an Order denying the motion.

■ It is apparent from the statute, 28 U.S.C. § 1867(a), that the motion of defense counsel was too late. The motion was *after* the voir dire examination had begun. The defense contends that the motion was timely made because the defendants had a Motion to Suppress certain evidence which was denied on January 10, 1972, and since the time gap was only 17 days, from January 10 to 27, 1972, this did not allow defense counsel enough time to discover the alleged unconstitutionality of the selection of the jury (Jan. 28, N.T. 3).

■ The statute in question reads in the disjunctive, that is, ". . . before voir dire . . ., *or* within seven days . . ., whichever is earlier, . . ." [Emphasis added]. The fact that defense counsel was engaged in other matters or did not have enough time to investigate his allegations is irrelevant. Defense counsel made his motion after the voir dire and there is no indication that defense counsel made his motion within the limits of the statute.

It is clear from reading the legislative history of the bill that Congress set up the time limitations to reduce the possibility of challenges to the jury for delaying purposes only. The legislative history as stated in 1968 U.S.Code Cong. and Adm.News, p. 1805 is as follows:

The new section 1867 establishes the procedure for challenging compliance with the act in the selection of both grand and petit juries. The Attorney General and the defendant in criminal cases, and both parties in civil cases, are allowed to challenge the selection procedures. But the provisions of the bill are designed to reduce the possibility that such challenge will be used for dilatory purposes.

First, the bill sets time limitations upon the availability of challenges. Subsections (a), (b), and (c) specify that challenges must be offered before the voir dire begins. And if the challenging party discovered, or in the exercise of diligence could have discovered, the grounds for the challenge earlier, the challenging motion must be made within 7 days of that earlier date.

For the purpose of clarity, the Court has reviewed the case of Dow v. United States Steel Corporation, 195 F.2d 478 (3rd Cir. 1952) which requires a hearing if the method of selecting jurors is such that a party cannot have a fair trial. This holding was amplified in Dow v. Carnegie Illinois Steel Corporation, 224 F.2d 414 (3rd Cir. 1955). However, the procedural limitations which are stated in 28 U.S.C. § 1867(a), *supra*, must be followed. Since defense counsel was not within the time limitation and he could have investigated the matter between January 10 and January 27, 1972, the defendants are now precluded from raising the arguments based upon *Dow*, (1952) *supra*.

*4. A mistrial should have been granted or cautionary instructions to the jury should have been given when the United States Attorney was about to try on one of the hoods allegedly used in the robbery and upon defense counsel's objection, the government attorney stated, "Are you volunteering your clients, Mr. Segal?"*

The statements by the Assistant United States Attorney, Mr. Penrose, which

precipitated the Motion for a Mistrial was made on January 28, 1972, N.T. 41–42 and is as follows:

BY MR. PENROSE:

Q. Mrs. Yetter, with respect just to color how does that color compare or contrast with the hoods worn by the two, well, worn by the robbers that you saw?

A. Well, I would say it looks like it definitely.

MR. SEGAL: I am sorry, I did not hear your answer.

MRS. YETTER: It does look like it.

MR. PENROSE: Now, I am going to try one of these on.

MR. SEGAL: That is objected to, your Honor. There is no basis to establish—please take it off, Mr. Penrose, until I am done.

THE COURT: Your objection is overruled. It is perfectly proper to utilize it.

MR. SEGAL: I appreciate your Honor's rule, I just wanted to add that my position was there is no indication that Mr. Penrose bears any resemblance shape-wise or otherwise to the persons involved in this holdup, and for him to demonstrate this casts the matter in the wrong light and suggests maybe this is an accurate demonstration.

MR. PENROSE: Are you volunterring your clients, Mr. Segal?

MR. SEGAL: If your Honor pleases, I move for a mistrial.

THE COURT: And your motion is denied.

MR. SEGAL: I ask the Court to caution the District Attorney that is such a grossly improper remark that it offends the Court as well as the rights of any parties in this case. It is uncalled for. There is no justification for it either in the law or in fact. Even good advocacy does not require one to make a remark that is so grossly unfair.

MR. PENROSE: Your Honor, if I may reply very succinctly?

THE COURT: There is no need for a reply, but please restrain yourself in the future.

MR. PENROSE: Yes, your Honor. May I proceed?

THE COURT: I do not want remarks between counsel at any time. You may address the Court if you have an objection and I will rule on it.

MR. PENROSE: Your Honor, if I may, then, I will address the Court and I do apologize for speaking directly to Mr. Segal.

THE COURT: Thank you, and don't do it in the future.

The defense contends that the statement of the government attorney created an implication of a tacit admission in the minds of the jury. This contention is based upon the assumption that the government had impliedly requested the defendants to try on the hoods and the defendants implied refusal.

There is no doubt that this type of tête-à-tête is and was not approved of by the Court and, as can be seen, the Court did make its thoughts known as to how it felt about conversations between counsel. Also, the Court in its charge to the jury stated that the defense did not have to produce any evidence and no inferences could be drawn from this fact (Feb. 4, N.T. 86, 87 and 89). The Court also instructed the jury not to consider the statements of counsel as to the law or the evidence (Feb. 4, N.T. 78 and 89–92). The comment by the United States Attorney does not warrant the granting of a new trial. See United States v. Hamilton, 322 F.Supp. 1315 (W.D.Pa.1971), affirmed 455 F.2d 1268 (3rd Cir. 1972).

*5. The Court should have granted defendants' motion to suppress the evidence as to the "bait money" since no sequential serial numbers were shown in the evidence as to the alleged "bait money".*

This particular issue was not raised at the suppression hearing; however, the Court relies on its previous holding in

**1390**

denying the present motion. For clarification, the Court would not have changed its reasoning whether the money had sequential numbers or not. See Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963) and State v. Zito, 54 N.J. 206, 254 A.2d 769 (1969).

*6. The Court should have granted Dennis Nazarok's motion to dismiss the indictment because of the denial of his right to a speedy trial.*

The Court in a Memorandum and Order denied the Motion to Dismiss the Indictment on January 26, 1972. There is no basis for the Court to change its ruling.

Finally, the verdict was not contrary to the law or the evidence and there was no error in the Court's Charge to the jury. Accordingly, for the reasons stated above, defendants' Motion for New Trial or Arrest of Judgment will be denied.