**UNITED STATES of America**

v.

**Joseph CHRZANOWSKI, Appellant in No. 73–1591, and Alex Chrzanowski.**

**Appeal of Alex CHRZANOWSKI, in No. 73–1592.**

**Nos. 73–1591, 73–1592.**

United States Court of Appeals, Third Circuit.

Submitted on briefs May 29, 1974.

Decided Aug. 28, 1974.

James Hunter, III, Circuit Judge, filed concurring opinion.

James M. Horan, New York City, for appellants.

Jonathan L. Goldstein, U. S. Atty., William T. Pizzi, John J. Barry, Asst. U. S. Attys., Newark, N. J., for appellee.

Submitted Under Third Circuit Rule 12(6) May 29, 1974.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

HANNUM, District Judge.

Appellants, Joseph Chrzanowski and his brother Alex Chrzanowski, were convicted in the District Court for the District of New Jersey of (1) conspiracy to

use extortionate means to collect extensions of credit (Count I), (2) using extortionate means to collect extensions of credit (Count II) and (3) using extortionate means to punish for non-payment of an extension of credit (Count III), all in violation of 18 U.S.C. § 894.[1] Both defendants were sentenced to ten years imprisonment on each count, the sentences to run concurrently.

The main witness for the Government was one, James Jelicks. Jelicks testified that he had taken a $400 loan from the Chrzanowski brothers, paid it back several times over, suffered several beatings at their hands for non-payment, and yet was still in debt to them. After an alleged brutal beating on December 11, 1971, Jelicks went to the police.

The defense attempted to establish that the beatings had never occurred, that in fact Jelicks had been intoxicated on December 11, 1971, and that the injuries received on that date were self-inflicted. In addition, two defense witnesses testified to the good character of the appellants.

Appellants urge that the trial court committed five specific errors:

1—in permitting certain rebuttal testimony;

2—in failing to grant a mistrial when the jury glimpsed the defendant in handcuffs and in the custody of a United States Marshal;

3—in failing to include an entrapment instruction in the charge to the jury;

4—in refusing to read lengthy portions of the transcript to the jury when the jury so requested during its deliberations, and

5—in failing to include an instruction on immunity or inducement to testify in the charge to the jury.

The appellants request a reversal of the conviction, or in the alternative, a New Trial.

■ Appellants first contend that the court abused its discretion in admitting the testimony of two government witnesses in rebuttal. At the trial the defense presented three witnesses who disputed Jelicks' account of one of the extortionate loan collections in issue, and two character witnesses who testified that the defendants were not the sort of persons who would commit such acts. Over appellants' objections, the government called two witnesses in rebuttal who testified to incidents of beatings and extortionate loan collections by the appellants which were not charged in the indictment. Specifically, appellants contend that such evidence of other crimes is inadmissible, or at least improper as rebuttal.

■ This rebuttal testimony clearly would be admissible as part of the government's case in chief. Although inadmissible to show a mere propensity or disposition to commit crime, evidence of other crimes is admissible to show appellants' intent, plan, scheme, design or *modus operandi*. United States v. Todaro, 448 F.2d 64 (3d Cir. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1972); United States v. Carter, 401 F.2d 748 (3d Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L. Ed.2d 797 (1969); United States v. Stirone, 262 F.2d 571 (3d Cir. 1958), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

After this testimony was received, the trial judge cautioned the jury on the limited use of such testimony, and again in his final charge he repeated the warning as follows:

Now, the Government offered two witnesses, Orloff and Faver, who testi-

1. 18 U.S.C. § 894 provides in pertinent part as follows:
Collections of extensions of credit by extortionate means
(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or
(2) to punish any person for the nonrepayment thereof, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

fied that they, too, owed money—Orloff to a third brother of the defendants and Faver to the defendant John —or Joseph, rather, I am sorry—and that they were threatened, and in Faver's case, struck.

This testimony was offered by the Government in an attempt to illustrate an intent, plan or scheme by the defendants to engage in this type of activity. I allowed you to hear it solely for that purpose.

Again, I cannot charge you in any stronger terms that before you can even consider this evidence of Faver or Orloff, you must first find that the other evidence in the case, standing alone, establishes beyond a reasonable doubt, as I have heretofore defined it, that either accused or both of them did the particular acts charged in the indictment or in any other counts thereof. (N.T. 1144–45)

Such limiting instructions given to the jury by the trial judge minimized any prejudice that might have resulted from the testimony.

■ It was also within the trial court's discretion to allow the testimony as rebuttal. The admissibility of evidence in rebuttal is committed to the discretion of the trial judge. United States v. Hykel, 461 F.2d 721 (3d Cir. 1972); United States v. Riccardi, 174 F.2d 883 (3d Cir. 1949), cert. denied, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party. United States v. Mallis, 467 F.2d 567 (3d Cir. 1972). The testimony in dispute here was relevant and probative to rebut the testimony of the character witnesses by showing that the defendants had committed similar acts. Moreover, the testimony was admissible to rebut the testimony of the three defense witnesses who disputed Jelicks' account of one of the extortionate loan collec-

tions in issue, since it showed a general scheme and *modus operandi* of such activity by the defendants.

Even though the testimony could or should have been offered as part of the government's case in chief, the trial court's decision to allow it as rebuttal is not reviewable in the absence of gross abuse of discretion. Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L. Ed. 343 (1895); United States v. Fench, 470 F.2d 1234 (1972), cert. denied sub nom., Blackwell v. United States, 410 U. S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961). Not only was there no gross abuse of discretion but we find that it was clearly within the trial court's discretion to allow evidence of other crimes committed by appellants in order to rebut evidence discrediting the government's account of the crime and evidence of appellants' good character.

■ Appellants next argue that a mistrial should have been declared because in the middle of its deliberations the jury may have briefly glimpsed one of the appellants being brought into the courtroom in handcuffs by a United States Marshal. Although the actual facts of the incident are in dispute, even if appellants' version is taken as true, the incident was brief and not aggravated. The fact that jurors may briefly see a defendant in handcuffs is not so inherently prejudicial as to require a mistrial. United States v. Rickus, 351 F.Supp. 1386 (E.D.Pa.1972), aff'd, 480 F.2d 919 (3d Cir. 1973); United States v. Figueroa-Espinoza, 454 F.2d 590 (9th Cir. 1972); United States v. Hamilton, 444 F.2d 81 (5th Cir. 1971); United States v. Leach, 429 F.2d 956 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

■ Appellants requested but were denied an instruction on entrapment. Their claim that this denial was error is

baseless. At the trial, Jelicks admitted using money received from F.B.I. Agents to make payments to the appellants on the outstanding usurious loan. However, the F.B.I. did not begin to give Jelicks the money with which to make payments until June or July of 1969. This was months after Jelicks had gotten himself involved with appellants by borrowing money from them, and after Jelicks had already suffered a beating at their hands. As the government points out, the appellants' defense at trial was not that the defendants had been induced into committing the crime by Jelicks, but rather that Jelicks had fabricated the entire story about the beatings, especially the beating on December 11, 1971. This point is aptly demonstrated by defense counsel's closing argument wherein he stated that these incidents had never occurred, that is, that Jelicks had not been beaten up by the appellants, that Jelicks had never given money to the appellants, and that Jelicks had never received money from the F.B.I. with which to make payments to the appellants.

Since there was no evidence of entrapment, the trial judge correctly ruled that the instruction was not necessary, United States v. Giuliano, 383 F.2d 30 (3d Cir. 1967), cert. denied, 389 U.S. 1055, 88 S.Ct. 805, 19 L.Ed.2d 852 (1967); United States v. Aloisio, 440 F.2d 705 (7th Cir.), cert. denied, 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971).

■ Appellants next contend that the trial court committed plain error in refusing to have certain testimony read to the jury at its request. During its deliberations, the jury requested a transcript of the testimony of Jelicks regarding December 11, the day of the final beating. The trial judge was of the opinion that it would be impractical to have all of this testimony read to the jury since Jelicks testified for three days. However, the trial judge stated that if the jury could make their request more specific, a reasonable amount of testimony could be read to them. The trial judge then sent the jury back telling them he would stay on the bench for fifteen minutes before returning to Chambers just in case there was an additional request.

Appellants contend that the relevant portions of Jelicks testimony could reasonably have been read to the jury. However, even if this is so it was still within the wide discretion of the trial court not to have the testimony read. It is a proper exercise of discretion to deny the jury's request to have testimony read where, as here, the length of the requested portions is substantial and would require sifting through the entire testimony of a witness without any specific guidance as to what was desired. United States v. Chicarelli, 445 F.2d 1111 (3d Cir. 1971); United States v. DePalma, 414 F.2d 394 (9th Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970).

■ Finally, appellants contend that it was prejudicial error not to instruct the jury on the issue of the credibility of one who is induced to testify by a promise of immunity from prosecution.[2]

At the trial, testimony revealed that Jelicks, a parolee, had been found in possession of a gun by the F.B.I. agent with whom he had been cooperating. This was a violation of parole for which Jelicks could have been returned to prison. Testimony further revealed that the

---

2. The point for charge which was requested and denied by the trial court is as follows: If the jury believes from the evidence that any person was induced to testify in this case by any promise of immunity from further punishment, or that any hope was held out, or entertained by him that he would be regarded or in anywise benefit if he implicated any of the defendants in the crimes charged herein, the jury must take such fact into consideration in determining what weight should be given to the testimony, closely scrutinized [sic] it and unless they can reconcile it with truth, completely reject it.

F.B.I. agent confiscated the gun and up to the time of Jelicks' testimony nothing further had resulted from the incident other than Jelicks getting "yelled at about it." From this incident appellants deduce that Jelicks was induced to testify by a promise of immunity from further punishment, and that, therefore, an instruction to that effect was required.

The trial judge rejected the instruction stating, "I will not charge it simply pointing out that there is no one here who has testified who has been waiting a disposition of a charge." N.T. 1149. We do not believe that under these circumstances the failure of the trial judge to give the requested instruction rises to the level of reversible error. The issue of the promise of immunity was at most tangential to the central question in the case, i. e., Jelicks' credibility. The record shows that the jury received a thorough instruction on credibility. In our view, that instruction was sufficient.

The judgment of the district court will be affirmed.

JAMES HUNTER, III, Circuit Judge (concurring):

I agree that evidence of other beatings and extortionate loan collections not charged in the indictment could have come in as part of the government's case in chief under the Circuit's precedent. Further, under the circumstances present in this case, I believe that its introduction on rebuttal was permissible. However, I cannot endorse the reasoning that leads the majority to this second conclusion.

The majority feels that this evidence was properly admitted as rebuttal for two reasons. First, they feel that it tended to refute the evidence, introduced by the defendants, that gave an account of the incidents leading to the indictments that differed from the government's account. Second, they believe that this evidence tended to refute the testimony of the defendants' "character" witnesses.

The majority's first rationale is, in my opinion, invalid and results in an unfortunate expansion of the scope of rebuttal beyond its proper parameters. Rebuttal evidence is designed to "explain, repel, counteract or disprove *the evidence of the adverse party.*" United States v. Mallis, 467 F.2d 567, 569 (3d Cir. 1972) (emphasis added). In this case, it is true that the defendants' version of the events in question tended to undercut the government's theory of the facts, while the rebuttal evidence tended to reinforce the government's case in chief. However, this fact alone cannot qualify this evidence as rebuttal. Rebuttal cannot merely reinforce the government's case in chief. It must specifically "explain, repel, counteract, or disprove" the defendants' evidence. Here, the government's rebuttal evidence in no way refuted the defendants' theory of the events that led to their indictment; it merely reemphasized the government's own theory of these events by showing *modus operandi.* As a result, I do not think that the evidence of other extortionate loan collections properly qualified as rebuttal to this aspect of the defendants' case.

The majority's conclusion on this point concerns me since its effect is to permit the government to withhold affirmative evidence that could as easily be a part of its case in chief, secure in the knowledge that it will be able to introduce it later under the guise of rebuttal. This will occur because any evidence that supports the government's theory of the facts will be admissible as rebuttal the moment the defendant's evidence begins to vary from the facts as related by the government. Thus, unless the facts are conceded by the defendant, the government will be able to split its case in chief into two parts and save some of its best evidence until the end

of the trial when its impact on the jury will be greatest.[1]

As a result, I believe that this rationale for the majority's decision permits the use of rebuttal for a purpose it was not designed to serve and gives the government a tactical advantage that will unfairly hamper the right of an accused to defend himself. I do not believe that it is good law.

The majority's second reason for permitting the introduction of this evidence on rebuttal is to refute the testimony of the defendants' "character" witnesses. Ordinarily, this rationale would be improper also, since the rule appears to be that evidence of good character can be rebutted by the government's own reputation evidence, but that it cannot be rebutted by evidence of specific acts of misconduct. Wigmore on Evidence, §§ 58, 53 (1940); *see* United States v. Michelson, 335 U.S. 469, 477–480, 69 S. Ct. 213, 93 L.Ed. 168 (1948); Shimon v. United States, 122 U.S.App.D.C. 152, 352 F.2d 449 (1965) (Burger, J.).

However, in this case, the defendants' questioning of their "character" witnesses went beyond mere reputation evidence. At one point witness Lawrence, in response to defendants' direct questions, stated that he had borrowed money from defendant Alex Chrzanowski and had later paid it back. By asking these questions, the defense presented testimony that tended to establish that the defendants, in the normal course of their activities, engaged in legitimate loan operations. Thus, it is my view that evidence of earlier incidents of extortionate loan collections could properly come in, on rebuttal, to show the defendants' true *modus operandi* but only to refute this specific, nonreputation, testimony.

1. Naturally, if the defendant concedes the facts, the government's statement of them will be fully established by the partial, but unrebutted evidence introduced by the government in its case in chief. Thus, this tactical maneuver can be undertaken by the government without risk.