UNITED STATES of America,
Appellee,

v.

Merrill H. KLEIN a/k/a "Morrie"
et al.

Appeal of Carl LUICK.

No. 74–1295.

United States Court of Appeals,
Third Circuit.

Argued Jan. 24, 1975.

Decided April 30, 1975.

752

Mervyn Hamburg, James A. Rothschild, Washington, D. C., Richard L. Thornburgh, Carl Lo Presti, Pittsburgh, Pa., John Murtaugh, Jr., Washington, D. C., for appellee.

Harold Gondelman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for appellant.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant, Carl Luick, and three others were indicted for mail fraud, 18 U.S.C. § 1341,[1] and for conspiracy to commit mail fraud, 18 U.S.C. § 371.[2] Luick was convicted on all counts.[3] On this appeal we must decide whether there was sufficient evidence to show that Luick knew he was dealing with a conspiracy to defraud several insurance companies of the proceeds owing on fire insurance policies. Because we believe there was insufficient evidence of that knowledge, we reverse.

### I.

The alleged conspiracy revolved around a scheme to destroy by fire a debt-ridden hotel for the proceeds of several fire insurance policies. During the summer of 1968, two of the hotel owners contacted one Karsnak about their continuing financial difficulties in managing the hotel. Karsnak, an unindicted coconspirator who testified as the government's chief witness, introduced the owners to codefendant, Merrill Klein. The evidence shows that it was Klein who suggested arson as a solution to the hotel owners' financial difficulties. After negotiations in which Karsnak acted as intermediary between the owners and Klein, Klein was hired to destroy the hotel for $60,000.

On March 1, 1969 the hotel was partially destroyed by fire. The representative of the insurance companies, Mr. Roy Cook, suspected that arson had been the cause of the fire because large plastic bags of gasoline were found in the re-

---

1. 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 371 makes it unlawful for " . . two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, . . . [where] one or more of such persons do any act to effect the object of the conspiracy . . . .."

3. Luick was sentenced on count I to a five year term, six months of which were to be spent in prison with four and one-half years probation and a $4,200 fine and on count II to a one year term with six months in prison and one year of probation. Sentence was suspended on the remaining counts.

Sentences on counts I and II were to run concurrently with the sentence imposed for Luick's prior conviction for conspiracy to commit mail fraud.

mains. There was no indication that the owners had been involved, however, so the insurance representative entered negotiations to settle on the policies.

The evidence shows that appellant Luick's role in the proceedings began only after the fire had taken place. Luick, a public fire insurance adjuster, was hired by Karsnak at a percentage-of-settlement fee to prepare proof of loss claims for the owners. Luick submitted proof of loss forms to Cook, the insurance representative, and after several adjustments, a $310,000 settlement for the hotel owners was reached.

Two of the hotel owners, with Luick and Klein, were indicted for conspiracy to defraud the insurance companies by mail and for twenty substantive counts of mail fraud. After a joint trial by jury, Klein and Luick were found guilty on all counts and the two hotel owners were acquitted.

## II.

■■■■ To support a conspiracy conviction, the government must show both an agreement and a specific intent to achieve some unlawful goal. United States v. DeCavalcante, 440 F.2d 1264, 1275 (3d Cir., 1971); United States v. Borelli, 336 F.2d 376, 384 (2nd Cir., 1964). We do not dispute that a party who associates himself with an ongoing conspiracy may become a party to that agreement, either expressly by agreement or implicitly by acts done in furtherance of that conspiracy. Direct Sales v. United States, 319 U.S. 703, 709, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); United States v. Lester, 282 F.2d 750, 753 (3d Cir., 1960). At a minimum, however, it must be shown that such a person has knowledge of the conspiracy's illicit purpose when

he performs acts which further that illicit purpose. Direct Sales, supra; United States v. Salerno, 485 F.2d 260, 263 (3d Cir., 1973); United States v. American Radiator & Standard Sanitary Corporation, 433 F.2d 174 (3d Cir., 1970).[3a] By acting in furtherance of the co-conspirators' goals with knowledge of the improper purpose, the jury can reasonably infer that the new member has achieved a tacit agreement with members of the ongoing conspiracy. Without knowledge of some improper purpose, the agreement, which is the heart of any conspiracy indictment, cannot be inferred from acts, even acts which further the purpose of the conspiracy. United States v. Kates, 508 F.2d 308 (3d Cir., 1975).

■■■ Knowledge of the illicit purpose will also serve as the foundation for the required proof of specific intent. According to the Supreme Court in Direct Sales, supra, the intent requirement in conspiracy,

.   .   . [w]hile .   .   . not identical with mere knowledge that another purposes unlawful action .   .   . is not unrelated to such knowledge. Without the knowledge, the intent cannot exist. United States v. Falcone [311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940)]. Furthermore to establish the intent, the evidence of knowledge must be clear, not equivocal. .   .   . This, because charges of conspiracy are not to be made out by piling inference upon inference .   .   .. 319 U.S. at 711, 63 S.Ct. at 1269.

■■■ In judging whether knowledge or specific intent have been shown in this case, we must, after a jury verdict of guilty, "view the evidence in the light most favorable to the prosecution." United States v. DeCavalcante, 440 F.2d at 1273. Glasser v. United States, 315

---

**3a.** In United States v. Feola, —— U.S. ——, ——, 95 S.Ct. 1255, 1269, 43 L.Ed.2d 541 (March 19, 1975), the Supreme Court stated "the knowledge of the parties [to the conspiracy] is relevant to the same issues and to the same extent as it may be for the conviction of the substantive offense." With respect to the instant con-

spiracy to commit mail fraud, therefore, the government was required to prove the same knowledge required for the substantive offense, that is knowledge of the scheme to defraud the insurance companies of fire insurance proceeds.

U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Circumstantial evidence is clearly proper to show these elements especially in a conspiracy case where direct evidence is likely to be scant.[4]

■ With respect to the substantive counts of mail fraud the government was required to prove a specific intent to defraud. United States v. Payne, 474 F.2d 603, 604 (9th Cir., 1973). Mere use of the mails by Luick, without a showing that by that use he intended to further the fraudulent scheme, would be insufficient to support the jury's guilty verdicts on the substantive counts.

■ The indictment in this case charged conspiracy to defraud several insurance companies by mail. Clearly, the purpose of this illegal agreement was the fraudulent procurement of fire insurance proceeds. In order to link Luick to this ongoing conspiracy, it was, therefore, essential for the government to prove his knowledge of a plot to defraud the insurors. Mere knowledge of arson would be insufficient to support a guilty verdict in this case.[5] Despite the government's argument ·to the contrary, the evidence simply gave rise to no inferences from which the jury could find that Luick had knowledge of the conspiracy to defraud the insurance companies.

The evidence showed that Luick paid Klein, the arsonist, a $5,000 referral fee,[6] N.T. 2876, and that Klein had referred fire adjustments to Luick in the past

with a similar fee arrangement, N.T. 2899. In a pretrial interview with the FBI, Luick denied involvement in any pre-arranged fire scheme but indicated that some of his acquaintances could possibly have been arsonists, N.T. 2872, 2877. Evidence also showed that Luick admitted that he adjusted fires with his "eyes closed," N.T. 2872, 2878, 2918. At the conclusion of a pretrial interview with the FBI, Luick remarked that even if the FBI charged Luick with mail ·fraud and put him out of business there would always be other fire adjusters to handle questionable cases. N.T. 2878.

As additional evidence against Luick, the government offered the testimony of a court clerk concerning Luick's prior conviction for conspiracy to commit mail fraud. The clerk read to the jury the following portions of the indictment with testimony that Luick had been found guilty of the offense charged.

That beginning on or about December 1, 1969 and continuing thereafter to on or about November 18, 1970, in the Western District of Pennsylvania, Carl Luick and others did knowingly and unlawfully conspire, continue, confederate and agree together and with each other to commit certain offenses against the United States, to wit: violations of Title 18 . . . Section 1341; that is to say, they conspired and agreed to use the United States mails in furtherance of a scheme and artifice to defraud and by means of

---

4. In *Direct Sales*, the Supreme Court emphasized the need for circumstantial evidence stating: "The proof, by the very nature of the crime, must be circumstantial and therefore inferential to an extent varying with the conditions under which the crime may be committed." 319 U.S. at 714, 63 S.Ct. at 1270. *See* generally Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920 (1959).

5. In his instructions to the jury the trial judge specifically stated: "We are not trying . . a case of arson . . . The crime about which the conspiracy is involved is a scheme to defraud in which the mails were used to advance the purpose of the scheme." Notes of Testimony (hereinafter N.T. at 6115) and again at 6130, he cautioned, "In order to convict Carl Luick of the conspiracy charges, you

must find that he knew the owners of the New Hoffman Hotel had in some way conspired to burn the hotel."

Yet in its brief the government argues that Luick knew Klein might have been involved in the arson. (Gov't brief at 16). Such knowledge would not be sufficient to show owner involvement.

6. An FBI agent testified about Luick's pretrial interview with FBI agents at which the $5000 fee was mentioned. The check from Luick to Klein's wife, Julianne Ban, was introduced as government exhibit # 42.

Luick's grand jury testimony which was also introduced at trial, substantiated the FBI agent's testimony. N.T. at 2918.

fraud to obtain money from [an] . . Insurance company . . .. ( N.T. 2572).

From these proofs, the government contends that the jury could infer the requisite knowledge. We cannot agree.

Clearly, the ongoing relationship between Luick and Klein could give rise to no inference of the requisite knowledge. It was not shown that Klein had a reputation for being an arsonist or that Luick should have been put on notice of suspicious facts in this case because of his past dealings with Klein.[7] In fact the nature of Klein's and Luick's past dealings was left wholly unexplained. Clearly, the referral fee would give rise to no inference that Klein should have been known as an arsonist to Luick. Nowhere in the record is there any evidence to show why a referral fee was paid but the referral fee would seem to negative any inference that excessive financial gain should have put Luick on notice of suspicious dealings.[8]. Presumably from their ongoing relationship the government would have us infer that Luick knew of some past reputation of Klein. The past relationship was presented to the jury as perfectly neutral. To infer from such evidence that Luick might know of any past bad reputation Klein might have had, is more than the evidence warrants.

But the government would have us go even further. In its view, the jury could infer from this past relationship not only knowledge of Klein's reputation but knowledge that because of Klein's involvement in this case, a plot to defraud the insurance companies must have been afoot. There is no logical connection between the evidence presented and such a conclusion.

Similarly, Luick's remark that he adjusted first with his "eyes closed" may have supported an inference that Luick knew arson had occurred in this case. Where even the insurance companies suspected arson and where the indictment did not charge conspiracy to commit arson, this evidence was simply insufficient.

The government characterizes as an admission Luick's hypothetical remark that even if the FBI were to charge him with mail fraud there would always be other insurance adjusters. Viewed in the light most favorable to the prosecution, this remark shows only Luick's awareness that the FBI considered him a possible defendant. It is one thing to know one might be charged with mail fraud and quite another to admit guilt for the actual offense.

■ The government would also have us believe the jury could infer the requisite knowledge from Luick's prior conviction for mail fraud. In admitting this prior conviction we believe the trial court abused its discretion. Moreover, the limited information read to the jury about the prior conviction renders meaningless any contention that it showed knowledge.

Generally, evidence of other offenses is inadmissible in a criminal prosecution. "The rule is qualified by a number of exceptions stated in terms of the *capacity of the evidence to prove some specific fact or issue* . . .. Of course, the trial judge may, in the exercise of his sound discretion exclude evidence which is logically relevant to an issue other than propensity, if he finds the probative value of such evidence is substantially outweighed by the risk that its admission will create a substantial danger of

---

7. Of course, by trying these two defendants jointly, the government precluded itself from showing Klein's past reputation in order to give rise to an inference that Luick should have had the requisite knowledge in the instant case.

8. Although the typical fee paid to fire adjusters apparently was 10% of the settlement, N.T. 955, Luick requested only 5% in this case, a $5,000 portion of which was paid to Klein's wife. The government seems to believe there was something suspicious about the reduced fee. We do not believe the jury could draw an unfavorable inference from the neutral act of charging a lower fee than normal. If Luick had known of the fraudulent scheme, it is logical to infer that he would have raised rather than lowered his adjustment fee.

undue prejudice." (Emphasis added.) United States v. Stirone, 262 F.2d 571, 576–577 (3d Cir., 1959), rev'd on other grounds 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); United States v. Chrzanowski, 502 F.2d 573, 575 (3d Cir., 1974); United States v. Hines, 470 F.2d 225, 228 (3d Cir., 1972); United States v. Todaro, 448 F.2d 64, 66 (3d Cir., 1971), cert. denied 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1972); United States v. Carter, 401 F.2d 748, 749 (3d Cir., 1968), cert. denied 393 U.S. 1103 (1960).

In this Circuit prior crimes are admissible, if in the trial court's view, their tendency to prove some issue outweighs any prejudice.[9]

In the instant case, the trial judge charged the jury that on the issue of intent it could consider the prior mail fraud conspiracy but only "to the extent that . . . a similar method of operation was employed in the prior crime."

N.T. 2573.[10] Although this was a correct statement of the law, the way in which the prior crime was introduced gave the jury no basis for determining whether a similar method of operation had been employed. Merely reading the prior indictment to the jury, in our view, had no probative value on the issue for which it was admitted. As such we conclude that admission of the prior crime in this manner was an abuse of discretion.[11]

But even assuming that it had been properly admitted, the prior conviction did not show knowledge in this case.[12] The jury was told only that Luick had conspired with unnamed persons to defraud an insurance company. The jury was not told whether Luick had acted as a fire adjuster in the prior conspiracy or whether arson had been committed or whether any of the same persons [13] or a similar scheme had been involved in the prior crime.[14] Where none of the facts

9. See generally II Wigmore, Evidence §§ 300–307 and McCormack, Evidence § 190 at 447, et seq. (1972) for a discussion of the rule and its various exceptions.

10. The text of the court's cautionary instruction, given at the admission of the prior conviction, is as follows:

. . . It may not be considered by you as evidence of the likelihood that the defendant committed the crime for which he is now on trial or any propensity to commit crime generally or that he is a person of bad character or bad repute for that.

It may only be considered by you in connection with the elements of the crime for which he is now on trial, a crime which requires an intent, a specific intent to do a certain act, an intent to do that act willfully and, knowingly . . . and it may be considered by you to the extent that is shown by the evidence to show that a similar method of operation was employed in the prior crime. N.T. at 2573.

No cautionary instruction was given in the general charge.

11. The government argues that it was not an abuse of discretion because the trial court was familiar with the record of the prior crime and knew the prior crime to be similar. Government's brief at 29. The in camera conference on this matter, N.T. 2531, et seq., does not support the government's allegation that the court was familiar with the facts of the prior crime.

But even if the court had been sufficiently familiar with the prior crime to judge its similarity, the critical failure here is that there was no basis for the jury to judge its similarity. See infra n. 15 for the typical method of presenting prior crimes to the jury.

12. At the in camera conference dealing with the prior conviction, the court asked whether the prior conviction would be admitted to show Luick's knowledge of the owner's involvement or to show that Luick had submitted false claims to the insurance company. The government attorney answered, "More the latter, your Honor." N.T. 2565–2566.

In its brief the government now argues that the prior crime shows precisely what it was disavowed as showing at trial.

13. The jury was informed that none of Luick's three co-defendants had been involved in Luick's prior crime. N.T. at 2574. They were not told that Karsnak, or other persons as yet unindicted, were also unrelated to the earlier crime of Luick.

14. According to Wigmore, a defendant's state of knowledge can be shown from a prior crime if it can be inferred (a) that in committing the prior crime the defendant received an impression of any fact at all, and (b) that from that earlier received fact, he would gain an impression as to the specific fact now in question. II Wigmore, Evidence § 245 at 43 and § 301 at 193–4. See McCormack, supra at 450, nn.42 and 43.

are presented and only the former indictment is read to the jury, there is no basis for the jury to infer what defendant might have known in the first case, let alone to infer from that knowledge what he was likely to know in the second case.[15] Absent any showing of factual similarity the government argues that the prior conviction had probative value to show the requisite knowledge in this case. In effect, the government argues that if Luick was convicted of conspiracy to commit mail fraud in the past, he must have known that he was dealing with an ongoing conspiracy to commit mail fraud in this case.

Even if the jury had been told the facts in the prior case, however, no inference of knowledge in this case could have been drawn. With the exception of Luick's participation in both transactions, the record quite clearly shows that there was no factual similarity between the two offenses.[16]

Simply stated, the prior crime had no probative value in showing Luick's knowledge of the instant plot to defraud the insurors.

It is noteworthy that Karsnak, the chief government witness, gave no testimony implicating Luick in the conspiracy to defraud the insurors.[17] The evidence, characterized by the government as sufficient, was presented through FBI reports of Luick's pretrial interviews, through a report of Luick's grand jury testimony and through the prior conviction. Considered cumulatively, this evidence is insufficient to support a finding that Luick had knowledge of the purpose of the conspiracy.[18]

▮▮▮ On the substantive counts of mail fraud, the government has also

---

For example, if a defendant on trial for murder by poison asserts lack of knowledge that the drug was poisonous, the prosecution could introduce a prior murder conviction in which the same poison had been used. The jury could infer from this prior conviction that defendant knew the drug was toxic. That inference could then be applied in the second case to show the requisite knowledge.

Where prior crimes, like mail fraud and conspiracy are put into evidence, however, the traditional rule of evidence is much more difficult to apply. These crimes can arise in so many different factual contexts, that no rule can be stated as to what knowledge a prior conviction will give. As such, greater caution must be exercised to show a basis of factual similarity before prior conviction for offenses like mail fraud and conspiracy are admitted to show state of mind in a subsequent crime.

15. Typically in criminal cases where prior crimes are admitted, the government supplies the testimony of witnesses who give evidence about the facts of the prior crime. From the facts the jury can make inferences as to state of mind in the subsequent crime. *See* United States v. Chrzanowski, 502 F.2d 573, 575 (3d Cir., 1974), two witnesses testified about prior beatings on the issue of specific intent; United States v. Rodriguez, 474 F.2d 587, 589 (5th Cir., 1973) FBI agent testified as to facts of prior narcotics sale to rebut entrapment defense; United States v. Payne, 474 F.2d 603 (9th Cir., 1973); United States v. Todaro, 448 F.2d 64, 66 (3d Cir., 1971), witnesses testified about facts of prior occurrence; United States

v. Kaufman, 453 F.2d 306, 310 (2nd Cir., 1971), evidence of prior false filing of personal income tax return admitted to show knowledge in later false filing case; United States v. Larsen, 441 F.2d 512, 514 (9th Cir., 1971), similar credit card frauds shown by testimony of witness in later mail fraud where credit cards were also used; United States v. Jones, 438 F.2d 461, 464 (7th Cir., 1971), testimony concerning prior drug sale; Fineberg v. United States, 393 F.2d 417, 419 (9th Cir., 1968), witnesses presented detailed testimony of prior schemes, which were very similar to crime in issue, to show specific intent.

In no case disclosed by our research has an appellate court approved the admission of a prior crime where only portions of the indictment were read to the jury. We disapprove this method of presenting former crimes to show state of mind in a later case.

16. *See* N.T. 2531, et seq.

17. The trial court instructed the jury "there is no testimony from Karsnak which establishes participation of Luick in that scheme. . . ." N.T. at 6121.

18. Considered cumulatively, the proof offered in this case was absolutely insufficient. As such, Learned Hand's maxim that ". . . the cumulation of instances, each explicable only by extreme credulity or professional inexpertness, may have probative force immensely greater than any one of them alone." United States v. White, 124 F.2d 181, 185 (2nd Cir., 1941), has no application in this case.

758

failed to sustain its burden of proof in that it did not show Luick's specific intent to defraud the insurance companies. Clearly, if Luick was unaware of the scheme to defraud, his innocent act of mailing proof of loss claims to the defrauded insurance companies cannot support the jury's guilty verdicts.

### III.

Because the government failed to sustain its burden of proof, Luick's conviction on all counts will be reversed, the sentence will be vacated and the matter will be remanded to the district court for entry of judgment of acquittal.